```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| OLLIE DUNN, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) Civil Action No. 5:05-CV-355-JMH |
| v. | ) |
| | ) |
| STEPHEN D. BUTCHER, | ) |
| individually and in his | )   **MEMORANDUM OPINION & ORDER** |
| official capacity as | ) |
| Superintendent of Wolfe | ) |
| County Schools, and WOLFE | ) |
| COUNTY BOARD OF EDUCATION, | ) |
| | ) |
|     Defendants. | ) |

           \*\*    \*\*    \*\*    \*\*    \*\*

Before the Court is Defendants Stephen D. Butcher, Superintendent of Wolfe County Schools, and Wolfe County Board of Education's motion for summary judgment [Record No. 19]. Plaintiffs Ollie Dunn, Samuel Dunn, Oletta Dunn Terrill, and Billy Joe Terrill have filed a response to that motion [Record No. 37], to which Defendants have replied [Record No. 40]. Fully briefed, this matter is ripe for review.

### I. Background

On or about August 9, 2004, Superintendent Butcher asked Plaintiff Ollie Dunn to support George Fletcher in the 2004 Wolfe County School Board election. Ollie Dunn refused Butcher's request and actively and publicly supported another candidate, Joe C. Brown. Brown eventually defeated Fletcher in the election.

Billy Joe Terrill is Ollie Dunn's son-in-law. On August 11, 2004, Billy Joe was working as a bus monitor for Wolfe County

Schools.  After all of the bus riders had exited the bus, Billy Joe exited the bus, walked around behind the bus to the side of the road, walked though some bushes, and urinated about five to six feet from a creek bank, with his back turned to the road, the bus, and a mobile home.  Afterwards, although he thought that the view from the mobile home was blocked by the bus and believed that no one could see him, he heard Randy Back call out to him from the direction of the mobile home:  "If I see you doing that again, I will call the law."  Back's wife reported the incident to the school board.  Billy Joe was subsequently suspended, and on August 26, 2004, Defendant Butcher sent Billy Joe a notice terminating his employment with the school district.

    Samuel Dunn and Oletta Dunn Terrill are Ollie Dunn's children.  In August 2004, both were employed as teachers at Wolfe County High School.  Oletta and Samuel claim that after August 9, 2004, when Butcher asked their father to support Brown in the election, they began to hear rumors that they would be transferred.  Oletta and Samuel did not receive any formal notice of a transfer until June 28, 2005 — the date of Superintendent Butcher's letter informing them that they would be switching places with their counterparts at Wolfe County Middle School and Campton Elementary.  Neither were told why they were being transferred.

    Plaintiffs allege that Superintendent Butcher's employment decisions were an effort to retaliate against the plaintiffs for

exercising their rights of free speech and association. Collectively, Plaintiffs' complaint states that Superintendent Butcher, by transferring Samuel Dunn and Oletta Dunn Terrill and firing Billy Joe Terrill, (1) deprived each Plaintiff of his or her constitutional rights to free speech and free association, in violation of 42 U.S.C. § 1983; (2) created a substantial loss of income and other economic losses; and (3) caused each Plaintiff embarrassment, humiliation, emotional distress and other non-pecuniary losses. In addition, the plaintiffs assert that Butcher acted with reckless and callous indifference to their rights; therefore, they are entitled to punitive damages. Defendants' Motion for Summary Judgment, filed in response to these allegations, is now before this court.

## II. Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at

325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the nonmoving party, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiffs]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

In their motion for summary judgment, Defendants make two primary arguments: (1) Ollie Dunn's claims must be dismissed because he lacks standing and (2) Billy Joe Terrill's, Oletta Dunn Terrill's, and Samuel Dunn's claims must be dismissed because they have failed to allege viable constitutional claims.

A.   Ollie Dunn's Claims

Pursuant to the standing doctrine, "the party seeking entrance to the federal forum bears the burden of alleging 'facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  To assert standing, the plaintiff must allege (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Forgy v. Stumbo*, 378 F. Supp. 2d 774, 776 (E.D. Ky. 2005).  Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). The party asserting standing must present evidence that tends to prove that he suffered an injury that is "distinct and palpable."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Causation requires that the injury be "'fairly . . . trace[able] to the challenged action of the defendant.'"  *Lujan*,

5

504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

Comparing the instant case to *English v. Powell*, 592 F.2d 727 (4th Cir. 1979), Defendants argue that Superintendent Butcher's actions did not cause Ollie "distinct and palpable" injury. The Court agrees. *See Allen*, 468 U.S. at 751-52 (explaining that "[i]n many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases"). Ollie's complaint that he suffered "emotional distress" because Butcher transferred his two adult children and fired his son-in-law does not amount to a "distinct and palpable" injury. The *English* case is applicable and the Court agrees with the defendants' conclusion that if the wife in *English* did not have "a proprietary interest in her husband's position" such that a decrease in his salary failed to give her an actionable claim, Ollie Dunn lacks an adequate interest in where his adult children teach to give him an actionable claim based on their transfers to another school. *English*, 592 F.2d at 730. Ollie Dunn's claims are "too indirect and speculative" to support a claim of standing, and without standing, his § 1983 claims must be dismissed. *Id.*

 B. Oletta Dunn Terrill's, Samuel Dunn's and Billy Joe Terrill's Claims

To establish retaliation for engaging in constitutionally protected activity, a plaintiff must prove the following elements:

6

"(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

### *1. First Amendment Right of Free Speech*

Samuel Dunn, Oletta Dunn Terrill, and Billy Joe Terrill have alleged that Superintendent Butcher transferred or fired them in retaliation for Ollie Dunn's protected speech. None of these three plaintiffs have alleged that they, as opposed to Ollie Dunn, even exercised their right to free speech. Although the Court agrees that none of the plaintiffs who were employed by the defendant has alleged that his or her right to free speech was infringed upon, the Sixth Circuit has nonetheless entertained similar claims by children who alleged that they were retaliated against after their parents spoke out against their school systems. *Henley v. Tullahoma City School System*, 84 Fed. Appx. 534 (6th Cir. 2003) (unpublished), in particular, provides guidance to this Court in this case.

In *Henley*, the plaintiff alleged that he, a high school student, was suspended in retaliation for his father's filing of a complaint against the high school basketball coach for racial

7

discrimination. *Id.* at 540-41. Oletta, Samuel, and Billy Joe have presented a parallel claim: they say they were punished because their relative exercised his free speech rights. The *Henley* court disposed of the son's claim by examining the flaws in the third prong of the son's *prima facie* case and explaining that "there is no genuine issue of material fact that these [disciplinary] acts were linked with a retaliatory motive." In Billy Joe's case, there is a temporal connection — he was suspended a few days after Butcher and Ollie Dunn's conversation. So the question the Court must answer is whether there is enough evidence to defeat summary judgment in this case. Plaintiffs fail to carry the day. Billy Joe presents no evidence that Superintendent Butcher's termination of his employment was retaliatory. The evidence attached to his response shows that Billy Joe's conduct was found to not have been "misconduct" for the purposes of receiving unemployment benefits, but none of the documents show that Superintendent Butcher used the termination to punish Billy Joe for his father-in-law not supporting a certain school board candidate. Similarly, Oletta and Samuel have not presented evidence on which a reasonable jury could base a decision that Superintendent Butcher transferred them in retaliation for Ollie Dunn's actions.

On pages thirty-three through thirty-five of the plaintiffs' response, they list what they believe is evidence of Superintendent Butcher's retaliatory motive. Reviewing the list, the Court is not

8

persuaded that any of the facts listed show that Butcher's decisions with respect to Oletta, Samuel, or Billy Joe's employment were motivated by Ollie Dunn's exercise of his free speech rights. So much of the evidence presented is speculative and based on gossip. *See Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (in demonstrating that the speech was a motivating factor in the adverse action, the plaintiff must "point to specific, nonconclusory allegations reasonably linking her speech to" the action). For example, the statement by School Board member Eddie Rose to Oletta that everyone knew that her transfer was "a political move" is not probative evidence of Butcher's retaliatory motive. Even the testimony by Tracy Creech in which she related her August 2004 conversation with Superintendent Butcher about moving Oletta to the middle school does not reveal an illicit motive on his part. Because Plaintiffs have failed to convince the Court that a genuine issue of material fact exists as to whether Butcher acted in retaliation, their claims that the defendants violated their free speech rights must be dismissed.

   *2. First Amendment Right of Intimate Association*

Samuel Dunn, Oletta Dunn Terrill, and Billy Joe Terrill, as "family members" of Ollie Dunn, have a protected right to associate with Ollie Dunn. In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court held that freedom of association includes the right "to enter into and maintain certain intimate human

9

relationships [which] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617-18. Therefore, a proper First Amendment associational claim requires the Court to determine whether Superintendent Butcher's action was an "undue intrusion" by the state into the relationship between the three plaintiff-employees, Oletta, Samuel, and Billy Joe, and their relative, Ollie. *See Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 WL 623730 (6th Cir. Aug. 11, 1999) (citing *Adkins v. Board of Educ. of Magoffin County*, 982 F.2d 952, 956 (6th Cir. 1993)). The Sixth Circuit's decisions in *Adkins*, *Ward*, and *Henley* are instructive.

In *Ward*, the plaintiffs alleged that their three daughters were barred from attending Athens, Tennessee public schools because of their association with their mother, whose incessant meddling into school activities infuriated the school board. *Id.* at *6. The plaintiffs conceded that their claim was not based on "any interference by the board in the Wards' family relations, but instead . . . on the board's penalization of the blameless Ward girls on grounds of their association with their mother." *Id.* As a result, the court found that "the Wards' associational claim cannot really be based on the First Amendment, but instead must be considered a more general due-process claim" and held that the analysis it conducted with regard to the plaintiffs' retaliation

10

claim was sufficient. *Id.* Oletta, Samuel, and Billy Joe are essentially making the same claim: they were blameless and were retaliated against simply because of their association with Ollie Dunn. This claim is duplicative of the plaintiffs' first claim, and the Court's conclusion that no genuine issue of material fact exists is equally applicable here.

The *Ward* court separates a true freedom of association claim from a retaliation claim. According to *Ward*, to maintain a *separate* claim based on freedom of association, the Ward plaintiffs had to show that the adverse action "would have been constitutionally impermissible even if the action against [their mother] was itself warranted."[1] *Id.* In other words, the plaintiffs in the case *sub judice* must show that the adverse actions they suffered would have been constitutionally impermissible even if Superintendent Butcher had not had a retaliatory motive. Oletta and Samuel do not show how their transfer from high school teachers to middle school teachers

---

[1] The *Ward* court distinguished the Athens City school board's actions from that of the defendant in *Adkins*, stating that while the damage to the girls was real, "it does not represent as naked a punishment of association as the more arbitrary actions in *Adkins*." *Id.* at *6. In *Adkins*, the Sixth Circuit found that a plaintiff had presented sufficient evidence to support a jury determination that she had been denied employment because of her marriage. *Adkins*, 982 F.2d at 955. The *Adkins* plaintiff testified that the defendant told her that he could not offer her continued employment because she was going to be mad at him because he was going to fire her husband and that he could not get rid of her husband, so she was "the next best thing." *Id.* at 954.

unduly intruded upon their relationship with their father. Likewise, Billy Joe does not show that his termination unduly intruded upon his relationship with his father-in-law. As a result, summary judgment will be granted to the defendants on the plaintiffs' claims that Defendants violated their freedom of association rights.

### IV.  Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that the defendants' motion for summary judgment [Record No. 19] be, and the same hereby is, **GRANTED**.

This the 23rd day of July, 2007.



**Signed By:**

*Joseph M. Hood*

**United States District Judge**